IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 3:06-CR-00272-BR |
| **Plaintiff,** | |
| | OPINION AND ORDER |
| v. | |
| **CLIFFORD J. BRIGHAM,** | |
| **Defendant.** | |

**S. AMANDA MARSHALL**
United States Attorney
**KEMP L. STRICKLAND**
Assistant United States Attorney
1000 S.W. Third Ave., Ste 600
Portland, OR 97204
(503) 727-1000

      Attorneys for Plaintiff

**JAMES F. HALLEY**
735 S.W. First Avenue
2nd Floor
Portland, OR 97204
(503) 295-0301

      Attorney for Defendant

**BROWN, Judge.**

This matter comes before the Court on Defendant Clifford J. Brigham's Amended Motion (#238) for Relief Pursuant to 28 U.S.C. § 2255. For the reasons that follow, the Court **DENIES** Defendant's Motion and **DECLINES** to issue a Certificate of Appealability.

## BACKGROUND

On June 28, 2006, a grand jury indicted Defendant with fourteen counts of Wire Fraud in violation of 18 U.S.C. § 1343; six counts of Mail Fraud in violation of 18 U.S.C. § 1341; three counts of Money Laundering in violation of 18 U.S.C. § 1957; and one count of Social Security Fraud in violation of 18 U.S.C. § 408. The grand jury also indicted Co-Defendant Melody MacDuffee on each count of Wire Fraud, Mail Fraud, and Money Laundering.

On January 19, 2007, MacDuffee pled guilty to one count of Wire Fraud.

On November 7, 2007, a jury convicted Brigham of thirteen counts of Wire Fraud, four counts of Mail Fraud, three counts of Money Laundering, and one count of Social Security Fraud.

On July 21, 2008, the Court sentenced Brigham to 12 months imprisonment for the Social Security Fraud conviction, 108 months for the Mail and Wire Fraud convictions to run consecutively with

the Social Security Fraud conviction, and 108 months for the Money Laundering convictions to run concurrently with the Mail and Wire Fraud convictions.

On December 3, 2009, the Ninth Circuit affirmed Brigham's conviction.

On December 18, 2009, Brigham filed a Motion to Vacate or Correct Sentence under 28 U.S.C. § 2255.

On December 1, 2010, Brigham filed an Amended Motion for Relief Pursuant to 28 U.S.C. § 2255.

## DISCUSSION

In his Amended Petition, Brigham alleges three grounds for relief: (1) his prosecution, conviction, and sentence violated his right to due process because "the conduct alleged in the money laundering counts did not constitute money laundering within the meaning of 18 U.S.C. § 1957, but in fact merged with the conduct alleged in the wire fraud and mail fraud counts"; (2) his prosecution violated his right to due process because he was "selected for prosecution on account of his race"; and (3) his prosecution and conviction violated his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution.

I. **Procedural Default**

In its Response the government contends Brigham's merger and

selective-prosecution claims are procedurally defaulted and may not be raised for the first time in a motion under § 2255.

When a defendant fails to raise an available claim on direct appeal, the claim is considered procedurally defaulted, and "may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986)). This requirement serves "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

The government notes Brigham's sole argument on direct appeal was that his conviction was based on insufficient evidence, and, therefore, the government contends any merger or selective-prosecution claims are procedurally defaulted.

Although Brigham does not contend he asserted a claim for selective prosecution on direct appeal, he asserts his "appeal brief did challenge the sufficiency of the evidence in support of his convictions, thus asserting the functional equivalent of the merger argument." In the alternative, Brigham asks the Court to allow him to amend his § 2255 Motion to allege his appellate counsel was ineffective for failing to raise a "*Santos* merger issue."

After reviewing Brigham's Appellate Brief, the Court

concludes Brigham did not raise either a selective-prosecution or a merger claim on direct appeal. Accordingly, the Court concludes Brigham procedurally defaulted those claims and cannot raise them here for the first time.

In addition, the Court declines to allow Brigham to amend his § 2255 Motion to add a claim for ineffective assistance of appellate counsel on the ground that trial counsel failed to raise a *Santos* merger claim on appeal because, for the reasons set out below, the Court concludes such an amendment would be futile.

## II. Merger of Convictions

As noted, Brigham asserts his convictions for Money Laundering should have merged with his convictions for Mail and Wire Fraud. Brigham bases his argument on the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008), which was decided eight months after Brigham's trial.

In *Santos* the defendant operated an illegal lottery. The defendant employed "runners" to gather bets from gamblers and to deliver the funds to "collectors." The collectors, in turn, delivered the money to the defendant, who used some of it to pay the runners' commissions, the collectors' salaries, and the lottery winners. *Id*. at 509. The payments to the runners, collectors, and winners formed the basis of an indictment that charged the defendant with running an illegal gambling business

5 - OPINION AND ORDER

and money laundering.  *Id.*  The defendant was convicted of, among other things, one count of Running and Illegal Gambling Business in violation of 18 U.S.C. § 1955 and one count of Money Laundering in violation of 18 U.S.C. § 1956.  *Id*. at 510.  The defendant collaterally attacked his sentence under 28 U.S.C. § 2255 alleging, among other things, "the federal money-laundering statute's prohibition of transactions involving criminal 'proceeds' applies only to transactions involving criminal profits, not criminal receipts" and the defendant's money-laundering transactions involved only criminal receipts.  *Id*.  A majority of the Court held the term "proceeds" as used in § 1956[1] and as applied to the defendant's offenses refers to the "profits" of the criminal activity rather than to the operation's "gross receipts" and that the defendant's payments to runners, collectors and winners constituted regular expenses of the illegal gambling business rather than profits.  *Id*. at 523-24.  Nevertheless, the majority opinion consists of a four-justice plurality opinion and a concurrence by Justice Stevens that sets out reasoning substantially different from the reasoning of the plurality.  The plurality found the term "proceeds" could mean either profits or gross receipts, but the rule of lenity weighs in favor of the more defendant-friendly profits definition.  *Id*.

---

[1] The Ninth Circuit has concluded the same analysis applies to "proceeds" under § 1957.  *See United States v. Bush*, 626 F.3d 527, 534 (9th Cir. 2010).

6 - OPINION AND ORDER

at 514. The plurality reasoned this definition was buttressed by what it referred to as the "merger problem"; *i.e.,* that functioning lotteries will presumably pay their winners, but payments from gross receipts are intended to promote the illegal lottery. *Id.* at 515. Accordingly, equating proceeds with gross receipts would turn almost every violation of the illegal lottery statute into a simultaneous violation of § 1956, thereby "radically increas[ing]" the defendant's sentence. *Id.* at 515-16. Justice Stevens concurred with the conclusion of the plurality that the defendant's payments to lottery winners and runners were not "proceeds" within the meaning of § 1956, but did so on the ground that the legislative history of § 1956 was evidence that Congress intended "proceeds" to encompass gross revenues when the predicate crime involved the sale of contraband. *Id.* at 528. Justice Stevens specifically rejected the plurality's application of the rule of lenity. The four dissenting justices interpreted "proceeds" as "the total amount brought in," *id.* at 530, and left the "merger problem" to be dealt with at sentencing. *Id.* at 547. In contrast, Justice Stevens concluded "proceeds" could mean "profits" with respect to one predicate crime and "receipts" with respect to another, a result rejected by both the plurality and the dissent. *Id.*[2]

---

[2] In May 2009 Congress amended § 1956 (and by extension § 1957) to expressly define proceeds to include gross receipts. Defendant, however, was convicted before the amendment, and,

7 - OPINION AND ORDER

In light of the lack of clear guidance in *Santos*, circuit courts have struggled to glean what rule, if any, *Santos* established.

In *United States v. Van Alstyne* the Ninth Circuit took up the issue of the "merger problem." In *Van Alstyne* the defendant defrauded 450 victims through a Ponzi scheme involving a number of companies organized for that purpose. 584 F.3d 803, 807 (2009). A grand jury indicted the defendant on nineteen counts of Mail Fraud and three counts of Money Laundering. *Id*. at 809. The money-laundering charges were based on three specific transactions: two charges involved a transfer of funds from one of the defendant's companies to another "for the purpose of making distributions to individual investors" and the other charge involved a transfer from one of the defendant's companies to another to refund one investor's entire outlay of cash. *Id*. A jury convicted the defendant of seven counts of Mail Fraud and all of the money-laundering charges. The defendant appealed and asserted *Santos* required reversal of his conviction for money laundering. *Id*. at 807. The Ninth Circuit concluded *Santos* required reversal of the two counts of Money Laundering based on the money transfers carried out for the purpose of making distributions to investors but did not require reversal of the

---

therefore, this Court must evaluate the merger problem as it existed under § 1957 before the amendment.

third count based on the money transfer made for the purpose of refunding an investor's entire outlay of cash. *Id*. at 813-14. The Ninth Circuit interpreted *Santos* as establishing that "proceeds" under § 1956 "means 'profits' where viewing 'proceeds' as 'receipts' would present a 'merger' problem of the kind that troubled the plurality and concurrence in *Santos*." *Id*. at 814. The Ninth Circuit concluded some, but not all, mail-fraud claims could present a merger problem. *Id*. at 815. With respect to the particular facts at issue in *Van Alstyne*, the Ninth Circuit noted

> [the defendant issued] distribution checks that supposedly represented generous returns on his victims' investment was a central component of the "scheme to defraud." Doing so directly inspired investors to send more money to [the defendant's] funds, which could then be used to pay returns to other investors. The very nature of the scheme thus required some payments to investors for it to be at all successful. In sending the January and June distribution checks funded by the money transfer that was charged as money laundering, [the defendant] "enter[ed] into a transaction paying the expenses of his illegal activity," *Santos*, 128 S. Ct. at 2027 (plurality opinion). Convicting [the defendant] of money laundering for the bank transfers inherent in the "scheme" central to the mail fraud charges thus presents a "merger" problem closely parallel to the one that underlay the majority result in *Santos*.

*Id*. at 815. In contrast,

> [t]he transaction . . . that fully refunded one investor's outlay cannot . . . be regarded as a crucial element of the "scheme to defraud." [That] transaction refunded the full amount invested by James and Evelyn Easley, in response to their complaints after the scheme began to unravel. The Ponzi scheme depended on attracting new investments and using some but not all of the

9 - OPINION AND ORDER

>           amount collected to pay returns to earlier
>           investors. Returning the entire amount of the
>           Easleys' investment to them undermined rather than
>           advanced the core scheme, as the funds returned to
>           them would not be available to lull other
>           investors into maintaining their investment. At
>           the same time, returning the Easleys' investment
>           was intended to "promote the carrying on," 18
>           U.S.C. § 1956(a)(1)(A)(I), of the "scheme" at the
>           heart of the mail fraud counts, by discouraging
>           detection of that scheme. As the mail fraud
>           "scheme" and money laundering elements are
>           distinct with regard to this money laundering
>           count, we affirm that count.

*Id*. at 815-16.

The Ninth Circuit addressed the merger problem again in *United States v. Bush*. In *Bush* the defendant "creat[ed] and operat[ed] three different 'high yield' investment programs . . . from 1997 until 2006" resulting in a "four-year, $36 million Ponzi scheme." 626 F.3d 527, 529. The defendant was convicted of, among other things, eight counts of Wire Fraud, three counts of Mail Fraud, and fifteen counts of Money Laundering. *Id*. The defendant appealed and argued that under *Santos* his money-laundering charges merged with his mail and wire fraud charges. The Ninth Circuit affirmed the defendant's conviction and concluded his conviction for money laundering did not present the merger problem noted in *Santos* and *Van Alstyne*. *Id*. at 537-38. The Ninth Circuit reasoned:

>           The circumstances surrounding the securities,
>           wire, and mail-fraud convictions were all distinct
>           from the money laundering, thus alleviating any
>           merger concerns. First, the securities fraud
>           conviction (Count 1) related to a January 2002

> attempted sale of an investment contract in Cabo
> San Quintin — a fraud that occurred more than 18
> months after the last money-laundering transaction
> charged in the Indictment. Likewise, the
> mail-fraud convictions (Counts 15-17) have no
> connection to the transfers — rather the mail
> fraud was based on [the defendant's] promotional
> activities and the sending of false documents to
> clients. With respect to two of the wire-fraud
> charges (Counts 12 and 13), the transactions
> involved transfers from a bank in Oregon to Bush's
> accounts in Washington after the money laundering
> was completed.
>
> This leaves only six wire-fraud charges (Counts
> 2-7) which could present "merger" problems.
> Unlike the cases analyzed earlier, however, none
> of the transactions from Bank Crozier to Bush was
> "central to carrying out the scheme's
> objective[s]." *Moreland*, 622 F.3d at 1166. The
> necessity of the transfers from Bank Crozier was
> limited to [the defendant's] personal interest in
> veiling the sources of his income from public
> authorities. Unlike *Moreland*, the Government
> showed that [the defendant] engaged in the
> transfers from Bank Crozier primarily as a means
> to benefit himself. This was evidenced by the
> fact that [the defendant] operated his scheme for
> several years without making these international
> transfers from Bank Crozier. Notably, the
> overseas money transfers began after authorities
> began investigating Hulaman, Mintus, and
> Wilcoxson. Rather than risk investors sending
> money directly to his Hulaman account, [the
> defendant] deflected attention by steering the
> investments overseas first. While this is not as
> detrimental to the Ponzi scheme as the defendant
> in *Moreland* refunding an investor's principal, it
> also did not directly assist [the defendant] in
> generating new investments. Taking additional
> steps to hide completed criminal activity is not
> central to the solicitations necessary for a Ponzi
> scheme to continue operating. Further, we decline
> to endorse a merger rule that would reward
> criminals for increasing nefarious behavior by
> taking additional steps to avoid justice.

*Id*. at 538-39.

Here the government asserts Brigham's convictions for money laundering do not present a merger problem because none of Defendant's convictions for wire and mail fraud depended on necessary payments in order to further Brigham's fraudulent aims. Instead the fraud convictions were based on Brigham's sending and receiving of documents that contained fraudulent information. The Court agrees.

The Indictment charges Brigham and MacDuffee with committing Wire Fraud and Mail Fraud by transmitting various real-estate purchase and escrow documents that contained fraudulent information in interstate commerce "by means of wire communications" and by United States Postal Service. The Indictment further charges Brigham with committing Money Laundering when on June 23, 2005, he took a check that represented a portion of the proceeds from one of Brigham's real-estate transactions based on fraudulent information and purchased a cashier's check made out to himself. There is not any indication in the record that Brigham used that money to produce documents that related to the charges of Mail and Wire Fraud.

The Court, therefore, concludes Brigham has not established his wire and/or mail fraud convictions merge with his money-laundering conviction. Thus, to the extent that Brigham seeks to amend his Amended Motion for Relief to add a claim for ineffective assistance of appellate counsel for failing to raise

a merger argument on appeal, the Court concludes any amendment to that effect would be futile. Accordingly, the Court denies Brigham's alternative request to amend his Amended Motion.

**III. Ineffective Assistance of Counsel**

Brigham also seeks to vacate his sentence on the ground of ineffective assistance of trial counsel. Specifically, Brigham contends trial counsel was ineffective when he (1) failed to move to dismiss the money-laundering charges on the ground that they merged with the wire and mail fraud charges and (2) failed to conduct an adequate investigation to locate and to call an expert in the mortgage industry as a witness.

**A. The Law**

The Supreme Court has established a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 678, 687 (1984). Under this test, a defendant must not only prove counsel's assistance was deficient, but also that the deficient performance prejudiced the defense. *Id*. *See also Earp v. Cullen*, 623 F.3d 1065, 1074-75 (9th Cir. 2010)(same).

To prove deficiency of performance, the defendant must show "counsel's representation fell below an objective standard of reasonableness." *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011)(citing *Strickland*, 466 U.S. at 687-88)). The court must inquire "whether counsel's assistance was reasonable

13 - OPINION AND ORDER

considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688. There is a strong presumption that counsel's assistance was adequate. *Id.* at 689.

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 695. *See also Stanley*, 633 F.3d at 862 ("[T]he defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland,* 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

**B.  Merger**

Brigham contends he received ineffective assistance of counsel because trial counsel "should have anticipated the Supreme Court's ruling" in *Santos*. *Strickland*, however, does not impose on counsel the duty to anticipate future developments of

the law. On the contrary, *Strickland* holds "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. In addition, the Ninth Circuit has repeatedly refused to find ineffective assistance of counsel based on subsequent developments in the law. *See, e.g., Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004)("*Strickland* does not mandate prescience."); *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994)(when reviewing counsel's performance, the court should not "apply the fabled twenty-twenty vision of hindsight"). The Court, therefore, concludes trial counsel's failure to anticipate the Supreme Court's decision in *Santos* was not objectively unreasonable.

In addition, Brigham's claim of merger would not have been successful for the reasons set out above even if trial counsel had asserted such a claim.

Accordingly, the Court declines to grant Brigham's Amended Motion on the basis that trial counsel failed to anticipate the Supreme Court's decision in *Santos* and, therefore, failed to move to dismiss on the basis of merger.

    **C. Mortgage expert**

Brigham asserts trial counsel was ineffective for "failing to conduct an adequate investigation to locate, and call as a witness, an expert in the mortgage industry to testify that

15 - OPINION AND ORDER

it was common practice in the mortgage industry at the time of the alleged events to submit loan documents with inaccurate information."

To establish prejudice caused by the failure to call a witness, a defendant must show the witness was likely to have been available to testify, the witness would have given the proffered testimony, and the witness's testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to the defendant. *Alcala v. Woodford*, 334 F.3d 862, 872–73 (9th Cir. 2003). Brigham, however, merely asserts trial counsel should have presented an unidentified witness who allegedly would have provided unspecified testimony. The Court, therefore, concludes Brigham fails to make the showing required by *Alcala*. *See, e.g., Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001)(the defendant failed to show prejudice when he "offered no evidence that an arson expert would have testified on his behalf at trial" and "merely speculates that such an expert could be found."); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997)(speculating as to what expert would say is not enough to establish prejudice).

In addition, even if there had been an available expert who would have testified that it was common practice in the mortgage industry at the time of the alleged events to submit loan documents with inaccurate information, it is questionable

16 - OPINION AND ORDER

whether there is a reasonable probability that the jury would have reached a verdict more favorable to the defendant even if it had heard such testimony. The Ninth Circuit has held a false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995). Even if an expert had testified it was standard practice in the mortgage industry at the time to submit inaccurate loan documents, it is clear those false statements would be material and form a reasonable basis for the charges of wire and mail fraud. The Court, therefore, concludes Brigham has not established he was prejudiced by trial counsel's failure to call a mortgage-industry expert.

Accordingly, the Court declines to grant Brigham's Amended Motion on the basis that trial counsel failed to call a mortgage-industry expert to testify that it was common practice in the mortgage industry at the time of the alleged events to submit loan documents with inaccurate information.

In summary, the Court concludes Brigham has not established that he received ineffective assistance of counsel. Accordingly, the Court declines to grant Brigham's Amended Motion on that basis.

## CONCLUSION

For these reasons, the Court **DENIES** Defendant's Amended Motion (#238) for Relief Pursuant to 28 U.S.C. § 2255 and **DECLINES** to issue a Certificate of Appealability.

IT IS SO ORDERED.

DATED this 27th day of January, 2012.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge